Good morning, Your Honor. John Sigovic and with me today are my colleagues Paul Lavinas and George Nowell. Together, we represent Appellant Matt Butler doing business at San Rafael Yacht Harbor. I request three minutes of my time be set aside for rebuttal. Please watch your time. May it please the Court. Matt Butler is not a converter, a trespasser, a wrongdoer. He did not harm Mr. Ramirez. He did not engage in any harm. He never admitted any harm to Mr. Ramirez. And there is no But none of that's relevant, is it? I'm sorry, Your Honor. Actually happened is not relevant to determining whether the complaint is filed as one as to which the insurance company owed a duty to defend. It is when the extrinsic facts as well as the complaint are considered together to determine the nature of the allegations being made against Mr. Butler. These allegations relate to the fact that allegedly somebody took Mr. Ramirez's property, damaged his vessels, caused him physical distress. Each of these allegations, in essence, is covered by Clarendon's lengthy package policy of marine insurance containing approximately seven different coverage parts related to various matters, including accidents under CGL-A, offenses under CGL-B, and approximately four or five areas of coverage related to the property of others, in this case, Mr. Ramirez's property. Well, Mr. Sivak? Sigovic, Your Honor. Sigovic, okay. I'll try to get that right, Sigovic. Thank you. The circumstances here that were alleged by Ramirez were an intentional act of Butler in taking the boat and bringing it back to Butler's wharf and tying it up and then taking it out of the water. All of these things that are alleged were intentional acts of Butler.    So, Mr. Sivak, would you like to comment on that? Yes, Your Honor, because there are other persons involved. There are Doe's. There's Pat Lopez. There's Mr. Leary. In short, to read others out of the complaints is not fair to the complaints as stated. Well, but you've got to say Butler wants the insurance company, Allstate? It's Clarendon, Your Honor. Clarendon, to defend him, and Clarendon says, well, you've got an intentional act that's been alleged against you, and none of these policies covers the intentional acts, so we're not going to defend you. Now, what's wrong with that? Because the policies are not so narrow. First of all, Gray v. Zurich conclusively shows Mr. Butler is entitled to a defense. Additionally, numerous questions of fact regarding who harmed Mr. Ramirez, what harmed Mr. Ramirez, conclusively show a duty to defend under a Barbara B. Let me get to what really concerns me here, and that is the State Farm against Spear, Cord, and Wright, that case, the California case, which I think is one that your firm submitted to us. Correct, Your Honor. That case clearly shows that Mr. Butler's lack of intent. Yeah. Now, in State Farm, where the allegation was that the defendant threw the plaintiff and intentionally threw him and caused him injury, and the defendant was saying well or the insurance company was saying, well, yeah, he intended to throw him in the pool, it was an intentional act, and we don't owe the defense. And I think the Court said, well, the act was intentionally to pick him up and throw him, and you didn't get him far enough, so he didn't get into the pool, he fell on the side and got hurt. Precisely. Now, we're going to have that say that's covered because that's an unexpected result of an intentional act, I think. Correct. And I'm wondering, here, the damages that Mr. Ramirez claims, are those unexpected occurrences from the intentional act that is alleged? Possibly, and very clearly, Mr. Butler never intended to harm Mr. Ramirez and never harmed Mr. Ramirez. He intended to tow the boat, he intended to pull the boat out of the water, intended to do a lot of stuff with the boat. Correct. But you're saying he had no intention to cause any harm whatsoever to Mr. Ramirez. So any harm that resulted, as alleged, is unexpected. An unintended consequence, a matter of fortuity to harm him. But you're saying he did it legally. It's not that he didn't intend to adversely affect him, let's say. He certainly intended to make his boat not usable. But you're saying he was, I mean, for the time being, for the period of time that  But, but, but, you're, I'm not trying to adversely affect your argument here. I'm just trying to clarify it. You're saying essentially he had the right to do what he did, not that he didn't adversely affect him. Mr. Butler certainly had the right to do what he did. The statement of decision clarifies that, as does the small claims decision. But it's clear also that Mr. Butler did not intend to harm Mr. Ramirez. He simply attempted to procure and assure his property lien rights in Mr. Ramirez's vessel. It's adverse to Mr. Ramirez, so. It may have been, but it was not intended by Mr. Butler to be that way. Mr. Ramirez could have retrieved his vessels at any time by paying the same. Cause of action and alleged intent. But it does also have a negligence cause of action. And you haven't said much about that. There is a negligence cause of action, isn't there? So stated, not necessarily. The word negligence doesn't appear. The negligence exists. Cause of action negligence against defendants Butler, S.R.Y.H., and Doe's, 1 to 10. Yes, Your Honor. This is in one of the amended complaints. The initial complaint does not state the word negligence. However, Mr. Butler, under the facts alleged in the initial complaint, is exposed to risk of liability for negligence as a bailee, as well as a marina operator. For example, somebody comes and breaks Mr. Ramirez's hatchet. But tell me why it's only the initial complaint that matters. It's not. All of the materials matter. However, the initial complaint shows the potential for coverage from day one. Because the facts. It wasn't a potential for coverage from day one, but there was potential for coverage from day ten. That will. It's a problem you'll get less defense costs. Is that why you don't want that? It confuses the argument somewhat, but if the court is willing to find the potential for coverage on day ten, we'll be pleased to find that our position has been vindicated. However. However, isn't it true that under California law that once you make your original tender of the complaint, and the facts are known to the insured at that point, the insurer has no duty to continue to investigate? That is not correct, Your Honor. Then what do we do with the case that suggests that that's the way it is? That is one case with two cases with very distinguishable and limited facts, which did not allege property damage. I think Your Honor is referring to Gunderson and Hurley. That's right. Those cases are distinguishable because Mr. Ramirez clearly alleged property damage in the form of trespass to his vessel's loss of use. So factually, Hurley and Gunderson are distinguishable. Furthermore, the – there are more facts that clearly – Then give me the case that distinguishes them. That distinguish – State Farm v. Wright very handily addresses the limited factors in which Hurley analysis applies. But as the – But aside from whether they have any duty to investigate, if there's a new complaint which was submitted to them, was this – were the amended complaints submitted to the insurance company? It was submitted to the insurance company. However, Clarendon did not submit it to the district court. But that's a different issue. But if it was submitted to the insurance company, then it's not a question of them having to investigate anything. If they had an amended complaint at the time – at the time that it was filed, presumably from that point forward, that should be the governing document, no? Unfortunately, the amended complaints, and there were two, were never filed. And the facts, however – They weren't filed, I see. And they weren't submitted to the insurance company either. Well, they were submitted to the insurance company. We tended it to the insurance company eight times, suggesting that they investigate, reconsider, look at more information. And each time, they said we gambled at the outset that Mr. Butler would be found to be a wrongdoer. But he was not, Your Honors. The statement of decision exonerates Mr. Butler and concludes that his – he did not harm Mr. Ramirez and further supports his initial statements that he did not intend to harm Mr. Ramirez. This is a Gray v. Zurich scenario, supported by State Farm v. Wright, and is a clear case that Mr. Butler's acts, whatever they were, did not directly lead to Mr. Ramirez's harm. In short, an accident. However, the finding or the necessity of an accident is only relevant to a CGLA analysis. Clarendon's policies are much broader. There is a CGLB, offense-based coverage. And there's also approximately three or four coverage parts of Clarendon's policy related directly to the property of others in Mr. Butler's care, custody, and control. The plain meaning of these provisions also provide Mr. Butler coverage for Mr. Ramirez's allegations, as well as a duty of defense on the part of Clarendon, which they did not do. They have ignored and simply said that these policies are simplistic accident only, or indemnity only. And admittedly, the policies are- Well, reading the language of the policies, they didn't just say this. If you read the language of the policies as the district court did, they found, going through each one of the levels of the policies, as to what the conditions were under the language thereof, and why it would not be applicable. What part of the district court analysis in doing all of that is incorrect. I mean, you can't just say, well, it's one general policy and it all exists for everything. There are some times you need an accident, some times you don't, or you may not. But even in those circumstances, the district court tried to enunciate why the policy would be applicable or not. And without me using all your time and getting into each one and going down through them, give me your best argument on any one of those areas. Very well, Your Honor. Under Form HBDC, the plain meaning of the policy says it recovers the property of others in the actual or constructive custody of the insured, Mr. Butler, against all risk of direct physical loss, trespass to Mr. Ramirez's vessels, and loss of his property. If legal proceeding be taken to enforce a claim against the insured Mr. Butler, Ramirez sued Butler, to conduct and control the defense on behalf of and in the name of Mr. Butler. Clarendon did not do that. Well, but that's a first party all risk provision. Those words nowhere appear in Form HBDC, and the plain meaning of the policy should govern. The policy says what it says, Your Honor, and Clarendon should be helpful. I read the policy. That's why I thought it was a first party all risk provision. Those words nowhere appear in the policy. The standards of construction that plain meaning should govern, and that if plain meaning will not yield the meaning, then to look at it as a reasonable marina owning insured would expect should govern. And if that fails, it should be construed against Clarendon as the drafter. To say that it is the type of insurance that cannot apply to Mr. Butler's expectations as a premium paying marina owning insured in California. My time is nearly up, Your Honors. I would like to emphasize that Clarendon's position is based on fundamentally disputed facts. They do not have undisputed facts to present their argument that Mr. Butler admitted any wrongdoing or harmed Mr. Ramirez in any way. I really think that that whole issue is entirely irrelevant, and every time you come to it, you completely undermine your case, of what Mr. Butler actually did, because the question is what was he alleged to have been done by the person who brought this lawsuit, Mr. Ramirez, who obviously had a very different view of the facts. The reason I keep coming back to it is because the tender letter to Ms. Layden and the materials attached to it were also considered or should have been considered by Clarendon. The ultimate question is what was the lawsuit about, not what actually happened. And the problem is Clarendon doesn't know what the lawsuit was about. They still don't know what the lawsuit was about, and those questions of fact conclusively determine their duty to defend in this matter. I would like to reserve my remaining time. Go ahead. Madam Presiding Judge, members of the Court, counsel, I am Dale Thayer of Modesto. With me at the counsel table is Colleen Van Eggman of my firm and Michael Hardiman of San Francisco. I know my time is limited, and I hope the Court will indulge me. I have a question.  I just want to clarify my presentation. Just for a moment, this is a question. It would be helpful to me to start where the provision that your opponent ended to it with. The HBTC section, which with property of others, there is a reference there to legal proceedings and to conducting and controlling the defense. So how can you say that it doesn't have a duty to defend in it? It specifically says it does, no? The insurance company may choose to defend if it wishes. There is no obligation to defend. That coverage is strictly first-party coverage. It's not a liability coverage. It's an all-risk policy. And it uses the labels are conclusions, it seems to me, but they're not. It's self-evident on the face. And this particular paragraph 20 uses the term liable, for which the insured is liable. And it talks about, again, legal proceedings taken to enforce a claim against the insured. So how do we know that it is an indemnity-only provision, other than that you're saying so? It doesn't read like one. You read insurance policies in their common and ordinary language. You do not add provisions to them. There is no defense provision in HBDC. Compare it to the provision in the CDL policy, where there is a duty to defend, where the insurance carrier shall defend. It's just a different, completely different coverage. The district court was very clear in its reading of it, in its opinion. It is not a third-party liability provision. Had Mr. Ramirez made a claim for some damage to the boat, then Mr. Ramirez might have a complaint with Clarendon. But this is Mr. Ramirez's property and his boat. It's not Mr. Butler's. It's just an all-risk policy. It's akin to an all-risk homeowner's policy, that there is no duty to defend. It's the same as the HMOL. Counsel keeps reading, keeps finding something in the HMOL that is not there, and that is a duty to defend. The HMOL says expressly it's an indemnity-only provision. Now, HMOL is a liability coverage. That is an add-back in the policy. In the CGL policy, you have the standard exclusions, and I believe they start with KLMN or thereabouts. Those take away things such as damage to property of others and the care, custody, and control of the insured. They take away damage to work product of the insured and so forth. The HMOL adds some of that back in, but it doesn't impose a defense obligation on the carrier. It instead, an indemnity-only provision. So what we do in those instances, when you have an insured, such as Mr. Butler, who has property of others in his care, custody, control, he will have coverage for damage to property of others for which he is found to be liable, and he will then be indemnified for it, provided it meets the other terms and conditions of the policy. And HMOL says right at the beginning, it's subject to all the terms and conditions of the policy. So we go back to the beginning of requiring there to be an accident and requiring there to be property damage. And that's what this case all comes down to. We can go on forever. I felt, from the beginning of this case, like I've been trying to capture smoke. I keep hearing, I keep hearing there's an accident. Clara, the old ad for Wendy's and Clara Pellett, where's the beef? Where is the accident? And that is a requirement. Mr. Thayer, can you distinguish for me State Farm and Wright? And why were the fellows, throwing the fellow toward the pool and he didn't quite make it? I have. I have not one moment's quarrel with State Farm versus Wright. In fact, I chided my friend Peter Abrams about taking the case up on appeal. I said, why did you do this? Let's take the facts of State Farm versus Wright. They intended to throw the boy into the water. They didn't. They threw him on the concrete deck and injured him. Now, had they thrown him into the water and had he been injured landing in the water, there would have been no coverage. I agree. Because they intended to throw him into the water. When you have an intervening unforeseen event, i.e., you miss the water and hit the concrete deck, then you have an accident. I have no problem with that. None at all. I said I chided Mr. Abrams, a very knowledgeable, learned, and experienced guy. There's some notion here that while they were taking the vessel back from the other marina, that paint was chipped or somebody took the engine or something like that. No, there was not, Madam Judge. There was not what? That was never alleged. That's part of what they keep trying to create. That's the smoke that they keep trying to chase down. No, that is not in the complaint. I admitted to the district court, I admit to you, that had Mr. Butler, in towing this boat from the Loch Lomond Marina back to his marina, had he swamped it and sunk it, there could be a potential for coverage for that, something that we would have defended. But that didn't happen. There is no intervening, independent act causing additional injury or harm. And there's no property damage. We come down to the beginning. And you're basing it all on the original complaint, right? Yes. Okay. Yes. This amended complaint, I don't know where this amended complaint came from. It's not a – it was never filed with any court, either the Federal court or the State court. Was it submitted to the insurance company? Yes. At a relevant time? Yes. It's – it's – As what? As something that was going to be filed or? I don't know. It was just submitted to. I said, was it filed? Remember, we're dealing – we deal with the pleadings. We can deal only with what is filed with the court. I mean, look at Gunderson, for example, what I'm having to – what I'm having to deal with in these cases. Gunderson and Judge Breyer's district court opinion recently in the Storick case. If it isn't pled, I can't defend it. That's what Gunderson comes down to. That's what Hurley is about. We don't have to speculate about unpled claims. Look at – look at probably the case that I think is the most important and most directly on point is Collin v. American Empire is probably the best, most lucid and straightforward opinion, talking about how we don't – we aren't concerned with the unintended consequences of intended acts. That's what – although they never say this in their brief, that is what the underlying theme of this insured's claim is, is that he's supposed to have coverage for the unintended consequences of his intended acts. That is not the law of California. There was a district court opinion that was authored by Justice Mosk, and it was promptly decertified by the California Supreme Court. But if you review American – Collin v. American Empire, you will see what the law is on the subject. The – if you also review that case, you'll see that the district judge gave a great advantage to the insured in this case by putting the burden on the insurer. That's not correct. The law of California is that the initial burden to make a showing bringing the claim within the basic coverage, i.e., an accident and bodily injury or property damage rests solely on the insured. It's not on the insurer to disprove them. This case really needs go no further than pages 944 to 946 of the record, which is the March 10, 2004 letter that Mr. Butler wrote to Kathy Layden, his insurance agent. He explains what he did. There is no hint of there being an accident in that letter, and there is nothing that has been shown to the carrier extrinsic to that letter and to that original complaint which gives even the slightest hint of there being an accident. You may consider – you must consider, as an insurer, extrinsic information, evidence – not evidence, I hate to use that – information extrinsic to the complaint. You must consider that, and that can create a potential for coverage. So the classic example is Mullen v. Glenn Falls, where the complaint alleges assault and battery, and the insured says, yeah, I hit him, but I did it in self-defense. That is information extrinsic to the complaint, and that creates, per Mullen v. Glenn Falls, a duty to defend the insured. There's nothing in this case – what can the insured point to anything extrinsic to that complaint as showing the existence of an accident? He says the amended complaint did. Amended complaint? I don't know. The amended complaint was never filed. We don't deal, again, per Gunderson. But you've just been telling us about this extrinsic information that comes to the insurance company. Why isn't the first amended complaint this extrinsic information? Well, it's filed not. I need to be consistent, and I will be. Yes, we must consider information extrinsic to the allegations of the complaint. However, if you will review that – Which illuminates the complaint. As I understand what you're saying, it has to be information that illuminates the complaint that was made. Yes. Not extrinsic evidence about a complaint that could have been filed but wasn't. Yes. Essentially. And even if you review that proposed amended complaint, there's nothing in it which talks about there being an accident. Well, there's an evidence section. It just says negligence. Negligence adds nothing to the calculus of determining a potential for coverage. A mere allegation of negligence. Well, but it relates to something that was negligent, a fire, as I understand it. The fire – I mean, you may think it's all very silly, but there is a cause of action in that complaint, which says that there was a fire caused by negligence and it harmed Mr. Ramirez. That's what it says. But the claim is that there was a fire and that – not that the insured's property – excuse me – not that the claimant, Mr. Ramirez's property, was damaged in the fire. No. The allegation is, is that Mr. Butler didn't – he breached his contract by thereafter not restoring services and providing water and sewer and showers. That's what the – that's what the allegation is. It's not an allegation that anything of Mr. Ramirez's was damaged. It's an allegation that – and then he goes on to say that because of – he says that in the answer to interrogatories, which are in the record, that he – that he unilaterally, Mr. Ramirez, that is, cut his payment to Mr. Butler. That's what started this fight. Mr. Ramirez reduced his payment unilaterally. Mr. Butler's – It would at least be a closer case, it seems to me. If you had an action – a cause of action relevant to the complaint that was before that – that was actually filed, that was called negligence, even if it was a – and even if it set out a string of causation that you would regard as a silly one. In other words, it – the allegation seems to be that because of the – this negligent fire, there was a consequence to – to Mr. Ramirez because he didn't have – it doesn't allege a breach of contract. It's just because then I didn't have the facilities I was supposed to have because of this negligent fire. And whether you'd have to defend that or not, it seems to me, would be a closer question than the complaint that we're dealing – actually dealing with. Madam is correct that whenever I see even a bare allegation of negligence in the complaint, I'm going to start looking at what it is. Just the word negligence, we know from all of the cases I've cited, means nothing. It adds nothing to it. But still, when you see it, you start looking more closely at the matter. You ask, what is this about? We aren't dealing with that, though. We can't defend unpled claims. That's Hurley, that's Gunderson, that's Judge Breyer's decision in Storick. If it isn't pled, it just isn't there. And it wasn't pled in this case. We look at the outset of what is alleged. The first determination is to review the complaint. Then you review any extrinsic information. The extrinsic information we were given is Mr. Butler's letter of March 10, 2004. There's nothing that gives either a hint of being an accident or property damage. There has never been an allegation of property damage, even if there was an accident. We just don't defend accidents unless there's an allegation of property damage. What you have here, if anything, is economic damage. That's what Mr. Ramirez, what his complaint was really about. He's alleging that his boat was lean-sailed and sold when it shouldn't have been, that they misrepresented the values to the small claims court, so on and so on. That's what the allegations are. Those aren't allegations of property damage. He was home when he was sleeping on the boat? I don't know. He said that it was his place of abode. Yes, I saw that. Yes. He said it was his place of abode. I know nothing more about it. We were never given anything more than that. I mean, remember that, and that goes to Part B of the coverage, this claim. The wrongful eviction. Remember that it's Mr. Ramirez who removed the boat from the marina and towed it over to the Loch Lomond. Remember, please, that Mr. Butler, the insured, doesn't lease, rent the boat to Mr. Ramirez. He leases or rents him a space on the water, a berth. He's never been deprived of that. As the district judge so clearly said. Well, he was deprived of that on the ground that he wasn't paying for it, but he was deprived of it. His boat was taken out of the water at some point, wasn't it? Yes. But yes, it was. But that doesn't fall within the coverage of the policy because Mr. Butler doesn't rent or lease that boat to Mr. Ramirez. It's Mr. Ramirez's berth. He was deprived of the use of the berth. There was a reason for that.  The insured in this case continued. Why isn't that an eviction? Why isn't? Why isn't it an eviction? I understand that he, that Mr. Ramirez took the boat away. Yes. Right. Then it was, then Mr. Butler brought it back. Yes. Right. And then Mr. Butler. Pulled it out of the water. He took it, then they took the vessels out of the water at that point? Yes. But then your notion would be that he wasn't evicting him from the berth because at that point he wasn't in the berth. Right. Well, he hasn't. Yeah. The boat wasn't in the berth. Mr. Ramirez took the boat where supposedly his place of abode, took it himself away from the berth. And Mr. Butler didn't evict him from anything. Mr. Butler exercised his lien rights. Mr. Butler. Mr. Butler confuses what he keeps saying what I did was lawful. It probably was. I don't know. That's not the point. What he did wasn't accidental. We aren't talking about exclusions for intentional conduct. We're looking at whether there is an allegation in the complaint or in extrinsic information provided the carrier of there having been an accident. Okay. You've used your time. Thank you very much for your argument. I thank you. I would hope the Court would indulge me. Just for a moment, I wanted to say that it's been 37 long years since I've had the opportunity of appearing before this Court. I was an assistant United States attorney in Los Angeles before I became a small town country attorney in Modesto. I went back and I looked at my filing cabinet. I got my old brief from May 1972, and I had the pleasure of arguing before Chief Judge Chambers at the time, the man who, along with Judge Browning, who were responsible for the case, was the Chief Justice of the United States. It is – it brings many memories to me to be here, and it's a great pleasure for me to be before this Court today. Thank you. Thank you very much. Pleasure to have you here, Mr. Sayre. Thank you very much. So we'll give you a minute or so in rebuttal. Thank you. All right. I think you have a minute 31. Clarendon's counsel repeatedly said what the Ramirez complaint is really about is. We have no idea how Clarendon knows what Ramirez's complaint is really about. If we're looking at the First Amendment complaint, First complaint, it's pretty clear what it's about. I mean, it's very – quite specific, and it says that what it's about is this intentional act of taking and stealing his boat. That's what it's about. And selling his boat. That's what it's about. It doesn't say anything about any damage to the boat. It doesn't say anything about anybody else doing anything to the boat. It doesn't say anything about – It does, Your Honor. I'm sorry? It does. The trespass allegation is property damage and others. The reading that Clarendon insists upon only works if you read out others from the complaint. Other persons. Does. Mr. Butler did not have the luxury of reading out others and does when he was being sued. What others apparently did were – was to trespass – convert, trespass, and sell the vessel. Which is an accident to Mr. Butler, alleging property damage. It's clearly covered under CGLA. If you take Clarendon's negative view – Think about property damage. Trespassing, Your Honor, is an allegation of damage to property. And there's a broken hatch latch in one of the materials submitted to Clarendon. In short, Clarendon insists that they know what the case is about, but they did not investigate the case. And they now claim surprise, much like in Aigner v. Worthington, that Mr. Butler did nothing wrong and did not intend to harm Mr. Ramirez. And like in the State Farm v. Wright decision, thus constituted an accident. In this – and with regard to the form HMOL, Clarendon should not be – succeed in being able to say it's a part of the CGLA because it requires an accident, but doesn't have a duty to defend, which clearly exists in the CGLA. There's either an accident requirement in HMOL and a duty to defend, or there's no accident requirement in HMOL and possibly an argument it's indemnity only. But Mr. Butler paid his attorney's fees and so is entitled to indemnity. At the end of the day, Storick and Gunderson, etc., are responded to most clearly by the Aigner decision as well as by the State Farm v. Wright decision that Clarendon put its head in the sand and gambled that Mr. Butler would not – would be found to have done something wrongful is its gamble. They gambled with Mr. Butler's fortunes and they shouldn't be permitted to benefit from that. They had a duty to investigate his claim. They had a duty to communicate honestly about that claim. They had a duty to submit full and complete papers to the district court, which they did not do, and then repeatedly represented that the materials filed were complete, that the district court had things in front of it, like the amended complaint, Your Honor, that they did not, because Clarendon did not include those papers. Well, what was the amended complaint representative to be? What – what – what it was communicated to the insurance company, what was said about it? That it was going to be filed, because at that time we understood the amended complaint was going to be filed. And then there was a second amended complaint which was going to be filed as well. And we were actually prepared with a summary judgment motion based on the amended complaint, and for whatever reason, Mr. Ramirez's counsel never filed it. Mr. Ramirez brought an improper complaint against Mr. Butler alleging a whole bunch of bad stuff that Mr. Butler and other persons did. These are the numerous questions of fact that under Barber v. B conclusively determined the duty to defend. Gray v. Zurd should control this case. Thank you, Your Honors, for your time. Thank you very much. And a pleasure. Thank you, counsel. The case of Butler v. Clarendon America Insurance Company is submitted and we are in recess for the day. Thank you. Nice to have you here, too, Mr. Sivak. Thank you for your arguments.
judges: Thompson, Berzon, Smith